DECISION
{¶ 1} Relator, Mitchem K. Shipp, filed this original action seeking a writ of mandamus directing the respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's application for permanent total disability compensation ("PTD"), and to issue an amended order granting PTD compensation or, in the alternative, to issue an order which complies with the applicable law.
 {¶ 2} In July 1991, relator was injured during the scope and course of his employment. His subsequent workers' compensation claim was allowed for the following conditions: "cervical intervertebral disc; right shoulder strain; acromial impingement with severe tendonitis of the supraspinatus tendon; Dysthymic disorder; cervical and thoracic strain; lumbar strain; lumbar segmental dysfunction; L5-S1 disc herniation; S1 radiculopathy."
 {¶ 3} Once filed, relator's complaint was referred to a magistrate of this court, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who later rendered a decision and recommendation which included comprehensive findings of fact and conclusions of law. (Attached as Appendix A.) Specifically, the magistrate concluded that the analysis contained in the commission's order, although brief, was sufficient to comply with the mandates set forth by the Ohio Supreme Court in State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167, and that the commission's order was supported by "some evidence." Accordingly, the magistrate recommended that relator's request for a writ of mandamus be denied. This matter is now before the court upon the relator's January 31, 2003 objections to that decision.
 {¶ 4} Relator's objections to the contrary, having independently reviewed the record, including the parties' briefs and stipulations of evidence, this court concludes that the magistrate discerned the pertinent legal issues and properly applied the law to those issues. Having completed our review, we have found no error in either the magistrate's decision or analysis. The objections to the magistrate's decision are therefore overruled.
 {¶ 5} Accordingly, we hereby adopt the magistrate's January 21, 2003 decision as our own, including the findings of fact and conclusions of law rendered therein. In accordance with the magistrate's decision, relator's request for a writ of mandamus is denied.
Objections overruled; writ denied.
WRIGHT and KLATT, JJ., concur.
WRIGHT, J., retired of the Ohio Supreme Court, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 IN MANDAMUS {¶ 6} In this original action, relator, Mitchem K. Shipp, asks this court to issue a writ of mandamus compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying his request for permanent total disability ("PTD") compensation and to issue an order granting the requested compensation or, in the alternative, to issue an order upon rehearing that complies with applicable law.
 {¶ 7} Findings of Fact:
 {¶ 8} 1. In July 1991, Mitchem K. Shipp ("claimant") sustained an industrial injury. His workers' compensation claim was allowed for: "cervical intervertebral disc; right shoulder strain; acromial impingement with severe tendonitis of the supraspinatus tendon; Dysthymic disorder; cervical and thoracic strain; lumbar strain; lumbar segmental dysfunction; L5-S1 disc herniation; S1 radiculopathy."
 {¶ 9} 2. In September 2000, claimant filed a PTD application supported by medical and vocational reports. He indicated that he was 41 years old, completed high school in 1978, and could read, write, and do basic math, although not well. He noted a work history as an insurance salesman, jig grinder, and gas station attendant. On a questionnaire, he stated that he had experience using micrometers, gauges, turn and totory tables, a radius and a grinder, as well as using a calculator for monetary calculations.
 {¶ 10} 3. In November 2001, claimant was examined on behalf of the commission by James T. Lutz, M.D., who found impairment based on the back and neck conditions and based on the conditions of the upper extremities. However, he concluded that claimant could perform sedentary work with respect to the allowed physical conditions.
 {¶ 11} 4. In December 2001, claimant was examined by Donald Tosi, Ph.D., who provided an extensive report regarding the allowed condition of dysthymic disorder, in which he concluded that, although claimant had sustained some impairment, he was able to return to any of his former positions of employment from a psychological standpoint.
 {¶ 12} 5. A vocational report was provided on behalf of the commission by Jennifer Stoeckel, Ph.D., who reviewed medical reports from Drs. Heitkemper, Stratton, Walters, Lutz, Tosi, Nekrosius, and Howard. She found that claimant was in the category of "younger person" and that his age was a positive factor.
 {¶ 13} In regard to education, Dr. Stoeckel noted that claimant graduated from high school but had indicated difficulty with reading, writing, and basic math and stated that he was dyslexic. Although she recognized that this may moderately impede rehabilitation, she observed that claimant's work history demonstrated that he had been able to learn semi-skilled work. In addition, Dr. Stoeckel found that claimant's employment as a jig grinder was skilled work, although the particular skills were not transferable to sedentary employment.
 {¶ 14} Further, Dr. Stoeckel noted that Dr. Howard's testing indicated higher intellectual functioning and that claimant indicated to Dr. Howard that he had also been employed as a tool and die maker, catalyst technician, and security job. Dr. Stoeckel found, overall, that the diversity of jobs suggested the capacity to meet the demands of entry-level employment. She acknowledged that, based on reported scores on reading, spelling, etc., claimant "may have difficulty" with jobs requiring reading, spelling, and computation but concluded that, if the reports of Drs. Lutz and Tosi were relied upon with respect to medical capacity, then claimant had vocational options, which she identified.
 {¶ 15} 6. In April 2002, the PTD application was heard, resulting in a denial of the requested compensation:
 {¶ 16} "After full consideration of the issue it is the order of the Staff Hearing Officer that the Application filed 09/06/2001, for Permanent and Total Disability Compensation, be denied.
 {¶ 17} "The claimant was examined on 11-26-01, at the request of the Industrial Commission with regard to the allowed orthopedic conditions by Dr. James T. Lutz. Dr. Lutz opines the claimant's allowed conditions to be permanent and to have reached maximum medical improvement. The claimant is further found to have a 31% whole person impairment rating and to be incapable of returning to his former position of employment. Dr. Lutz finds the claimant to be capable of sedentary employment.
 {¶ 18} "Dr. Tosi examined the claimant on 11-29-01, at the request of the Industrial Commission, with regard to the allowed psychological condition allowed in this claim. Dr. Tosi also opined the claimant's condition to be permanent and to have reached maximum medical improvement. Dr. Tosi finds the claimant to be capable of returning to his former position of employment and ascribes a 15% whole person impairment to the industrial injury.
 {¶ 19} "The Staff Hearing Officer finds that the claimant's allowed conditions are permanent and have reached maximum medical improvement. The Staff Hearing Officer finds that the claimant is not able to return to his former position of employment as a result of the 7-2-91, industrial injury. The Staff Hearing Officer does find that the claimant is able to engage in sedentary employment.
 {¶ 20} "The Staff Hearing Officer evaluated the Employability Assessment Report submitted by Dr. Stoeckel. Dr. Stoeckel opines the claimant's age and education to be positive factors when considering sedentary employment options. The vocational expert also opined the claimant to have no work skills transferable to sedentary level employment.
 {¶ 21} "The Staff Hearing Officer finds that the claimant is a person of young age, 42, with a high school education and a work history, of skilled employment, including a jig grinder, security guard, tool and dye maker and catalyst technician, a diversity which suggests the ability to adapt to a variety of entry level job positions.
 {¶ 22} "The Staff Hearing Officer finds that job opportunities in the entry level/sedentary position category includes, quality control inspector, claims clerk, telephone solicitor, referral and information clerk, surveillance system monitor and data entry, all of which the claimant's work history, education and physical ability seem appropriate.
 {¶ 23} "The Staff Hearing Officer therefore finds the claimant to be capable of engaging in sustained renumerative [sic] employment and denies the claimant's permanent total disability application.
 {¶ 24} "This order is based upon the medical report(s) of Drs. Tosi, 11-29-01, Lutz, 11-26-01, and the vocational report of Dr. Stoecket [sic], filed 2-8-02."
 {¶ 25} Conclusions of Law:
 {¶ 26} The issue before this court is whether the commission cited "some evidence" to support its decision denying PTD compensation and provided an adequate explanation of its rationale. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 27} Claimant argues no fatal defect in any of the medical reports, and the magistrate concludes that the commission was within its discretion to rely on the opinions of Drs. Lutz and Tosi in regard to claimant's medical/functional capacity for employment. See, generally, State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575, 577; State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165; State ex rel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18.
 {¶ 28} In regard to the vocational factors, the magistrate observes that the Ohio Supreme Court has ruled that the commission may view the possession of a high school diploma as an asset, even where test results show academic abilities at the grade-school level. State ex rel. Ellis v. McGraw Edison Co. (1993), 66 Ohio St.3d 92.
 {¶ 29} Similarly, a claimant's work history is subject to interpretation, and factors that do not appear to be assets may nonetheless be viewed as positive factors. In State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139, the court observed that performing only one job for many years could be viewed as an asset (showing steadiness and dependability) or as a disadvantage (showing narrowness of experience and skills). The court established that the commission has discretion to view a claimant's work history as indicative of positive traits even when transferable skills did not result. Id. Here, the commission found that claimant's work history had demonstrated his ability to learn skills in various jobs in the past, and that the diversity of jobs showed his ability to adapt to a variety of entry-level positions of employment. Those findings were not outside the commission's discretion.
 {¶ 30} The commission agreed with Dr. Stoeckel that claimant's age was a positive factor, and claimant has not established an abuse of discretion in that regard. Here, claimant was 41 years old when he applied for PTD compensation, an age the commission could view as a favorable factor for employment. See Ellis, supra (stating that the commission may view the age of 51 as young rather than old and may view that age as a help rather than a hindrance to reemployment); State ex rel. Miller v. Indus. Comm. (1996), 76 Ohio St.3d 590 (upholding the commission's favorable assessment of a claimant's age where the claimant "was only one or two years" older than the claimant in Ellis); State ex rel. B.F. Goodrich Co. v. Indus. Comm. (1995), 73 Ohio St.3d 525
(concluding that a person of 47 years was sufficiently young to make rehabilitation efforts feasible).
 {¶ 31} The magistrate recognizes that the record included other evidence that supported a finding of PTD. However, the role of the court in mandamus is limited. An order supported by "some evidence" must be upheld, regardless of whether the record includes other evidence, greater in quantity and/or quality, that supports the contrary decision. State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373, 376.
 {¶ 32} In his reply brief, claimant raises the issue that the commission failed to list in its order the expert reports on which it did not rely. Setting aside the question of whether relator may raise a new issue in the reply brief, the magistrate notes that the facts do not support the issuance of a writ under State ex rel. Fultz v. Indus. Comm. (1994), 69 Ohio St.3d 327. The commission had no duty to discuss or even mention the evidence on which it did not rely. See, e.g., Bell, supra; State ex rel. Lovell v. Indus. Comm. (1996), 74 Ohio St.3d 250.
 {¶ 33} In the present action, claimant has not met his burden of demonstrating that the commission's order was unsupported by some evidence in the record. Here, the commission was within its discretion to rely on the opinions of Drs. Lutz and Tosi, and to find that an age under 45 and a high school diploma are positive factors, and that a varied history of skilled and semi-skilled work shows a capacity to learn an entry-level job. Although the commission's discussion of claimant's age, work history, and education was not extensive, two of those factors, the relatively young age and the high school education, would not require an extensive analysis to conclude that they were positive factors. Overall, the magistrate finds that the commission's explanation of its reasoning with respect to the non-medical disability factors was sufficient under Noll, supra.
 {¶ 34} As in State ex rel. Records v. Indus. Comm. (1996),74 Ohio St.3d 256, 259, the commission's explanation of its reasoning may not have been perfect, but it was based upon evidence in the record and provided a sufficient explanation for its conclusion. As in State ex rel. West v. Indus. Comm. (1996), 74 Ohio St.3d 354, 356, the commission's explanation was brief, but "minimally satisfies Noll."
 {¶ 35} Accordingly, the magistrate recommends that the court deny the requested writ of mandamus.